UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARZIEH ADAB,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND<br>IMMIGRATION SERVICES, *et al.*,<br><br>Defendants. | Civil Action No. 15-248 (JEB) |

## MEMORANDUM OPINION

Plaintiff Marzieh Adab hopes to get the green light on her green-card application. Specifically, she seeks an EB-5 visa, which creates a pathway to citizenship for foreign persons who invest at least $500,000 in the United States. To proceed, Plaintiff first needed Defendant United States Citizenship and Immigration Services to approve her I-526 alien-entrepreneur petition. USCIS initially declined to do so, prompting Plaintiff to bring this suit. Before the case could begin in earnest, the parties reached a settlement agreement, pursuant to which Adab received a second shot to prove eligibility. After she apparently did so, USCIS gave its long-awaited approval to her I-526 petition and passed it along to the State Department for visa issuance.

The saga did not end there, however. Two years later, State asked USCIS to reconsider its approval, prompting the latter agency to issue notice of its intent to revoke the petition. Adab has now responded with the instant Motion to Enforce the parties' Settlement Agreement. She alleges that revocation would violate the Agreement and asks this Court to hold Defendants to their bargain. Adab's tactical move, however, stalls at the starting line. USCIS has not yet

1

revoked her I-526 petition, and thus the action that allegedly injured her is not yet ripe for review. The Court must therefore deny the Motion without prejudice.

I. **Background**

In 1990, Congress amended the Immigration Naturalization Act to provide a priority visa classification for "employment creation" immigrants who invest a substantial amount of capital in the United States and create full-time employment for U.S. workers. See Immigration Act of 1990, Pub. L. No. 101-649, § 121(a) (Nov. 29, 1990) (codified as amended at 8 U.S.C. §§ 1153(b)(5)). The program, known as the "EB-5" program (or, perhaps more colloquially, the "golden visa" program) has two core requirements: First, an applicant must invest at least $500,000 in a new or troubled commercial enterprise. See 8 U.S.C. § 1153(b)(5)(C); 8 C.F.R. § 204.6(f). Second, the investment must create at least ten jobs for lawful U.S. workers. See 8 U.S.C. § 1153(b)(5)(A)(ii).

Defendant USCIS administers the EB-5 program, see 8 C.F.R. § 204.6, and establishes the procedures governing EB-5 classification. See 56 Fed. Reg. 60,897, 60,910-13 (INS) (Nov. 29, 1991) (codified at 8 C.F.R. § 204.6). As is often the case with government benefits, the process for obtaining an EB-5 visa can be complex. Most basically, it proceeds in two steps: The USCIS (part of the Department of Homeland Security) must first approve a Form I-526, Immigrant Petition by Alien Entrepreneur. See 8 C.F.R. § 204.6(a). Its approval indicates that the petitioner has provided *prima facie* evidence of qualification for the visa. The Department of State then reviews any approved petition and, if appropriate, issues an EB-5 visa. Should State deem the petition approved in error, it will refer the application back to USCIS for further consideration. See USCIS, "Immigrant Visa Petitions Returned by the State Department

Consular Offices," available at https://www.uscis.gov/unassigned/immigrant-visa-petitions-returned-state-department-consular-offices.

On March 1, 2013, Plaintiff filed an I-526 petition with USCIS based on her $500,000 investment in a Riverside, California, development project. See Compl., ¶ 69. A year later, USCIS denied the petition (and that of 37 other investors in the project), concluding that the investors had failed to satisfy the Act's job-creation requirement. Id., Exh. 10 (USCIS Decision) at 14-25. Adab brought suit, first in California and, after a venue change, in this Court. See ECF Nos. 25 & 26. Before the case ramped up, however, the parties settled. Pursuant to the bargain, USCIS agreed to reopen Plaintiff's I-526 petition, giving her a second chance to establish her eligibility. See Mot. to Enforce, Exh. A (Settlement Agreement), ¶ 2. In return, Adab would "stipulate to dismiss this action with prejudice within sixty (60) days after USCIS issue[d] a final decision" on her petition. Id., ¶ 7. Should anything go awry, the parties also provided that "[e]ither Party may apply to th[is] Court for enforcement of [the] Agreement." Id., ¶ 5.

At first, all went according to plan. After consummating the agreement, the parties filed a joint motion to administratively close the case on June 8, 2015, on the ground that the agency would soon thereafter process the petition. See ECF No. 44. A few weeks later, USCIS issued a notice of approval. See Mot. to Enforce, Exh. C (Approval Note). Despite USCIS's final decision, however, the parties never filed a stipulation of dismissal, and this case has remained administratively closed ever since. The parties offer no explanation for why they failed to follow up.

With the case on ice, trouble eventually ensued. Plaintiff's application proceeded to the State Department, which bears the final responsibility for issuing an EB-5 visa. See 8 U.S.C.

3

§ 1201(a)(1).  On review, State suspected that Plaintiff had committed fraud in her application, see Def. Opp., Exh. A (Declaration of Julia L. Harrison), ¶ 5, and therefore deemed her ineligible to receive a visa.  See Mot. to Enforce, Exh. D (Foreign Service Refusal Worksheet) at 1.  As Defendants explain, the Department's Fraud Prevention Unit purportedly discovered that eleven out of the fifteen employees for whom Plaintiff had submitted I-9 Forms were not U.S. citizens or otherwise qualifying U.S. workers.  See Harrison Decl., ¶ 5.  Further, it determined that those eleven I-9 Forms included fraudulent information as to each individual's alien-registration number and, in some cases, social-security number.  Id.  State believed the false information was submitted willfully to the Government to obtain an immigration benefit and therefore suspected Plaintiff had committed misrepresentation.  Id.; see 8 U.S.C. § 1182(a)(6) (misrepresentation is one basis of inadmissibility).  In light of its investigation, the agency returned the I-526 petition to USCIS with a detailed memorandum of its findings and recommendation for reconsideration.  See Harrison Decl., ¶ 3.

Based on these recommendations, USCIS issued a Notice of Intent to Revoke (NOIR) to Plaintiff on June 15, 2017.  See Mot. to Enforce, Exh. G (NOIR).  The NOIR set forth the State Department's findings in detail, noting that the current record, if unexplained and unrebutted, would warrant revoking her petition.  Id.  The NOIR also advised Adab of her opportunity to offer evidence in support of said petition and in opposition to the proposed revocation within thirty days.  Id.  Before responding to the NOIR, however, and prior to any decision by USCIS, Plaintiff filed the instant Motion on July 12, 2017, asking this Court to enforce the parties' Settlement Agreement.  See ECF No. 45.

**II.    Legal Standard**

This Court's authority to enforce a settlement agreement is "well established." Autera v. Robinson, 419 F.2d 1197, 1200, 1200 n.9 (D.C. Cir. 1969) (holding that a "trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it"). Unless the parties dispute whether a binding settlement agreement exists, a district court may enforce it summarily. Id. In this case, the Government concedes the legitimacy of the June 4, 2015, Agreement. The relevant merits question, accordingly, is simply one of contract interpretation. Keepseagle v. Perdue, 856 F.3d 1039, 1047 (D.C. Cir. 2017) ("We interpret a settlement agreement under contract law."); see also Gonzalez v. Dep't of Labor, 609 F.3d 451, 457 (D.C. Cir. 2010).

Before the Court may reach the merits, however, it must first determine whether it has jurisdiction to do so, as "Article III jurisdiction is always an antecedent question." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 101 (1998). A court may not, therefore, "resolve contested questions of law when its jurisdiction is in doubt." Id. at 101; cf. Lee's Summit, MO v. Surface Transp. Bd., 231 F.3d 39, 41 (D.C. Cir. 2000) ("When there is doubt about a party's constitutional standing, the court must resolve the doubt, *sua sponte* if need be.").

It is the plaintiff who bears the burden of proving that the court has subject-matter jurisdiction to hear her claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). Although the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged,'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d

605, 608 (D.C. Cir. 1979)) (citation omitted), "the [p]laintiff's factual allegations . . . will bear closer scrutiny in resolving" jurisdictional issues than merits ones. See Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, a court "may consider materials outside the pleadings in deciding [questions] of jurisdiction. . . ." Jerome Stevens Pharms., Inc. v. F.D.A., 402 F.3d 1249, 1253 (D.C. Cir. 2005); cf. also Venetian Casino Resort, LLC. v. E.E.O.C., 409 F.3d 359, 366 (D.C. Cir. 2005) ("[G]iven the present posture of this case — a dismissal under Rule 12(b)(1) on ripeness grounds — the court may consider materials outside the pleadings.").

## III. Analysis

As outlined above, a court has an "affirmative obligation" to ascertain its jurisdiction as to "each dispute." James Madison Ltd. *ex rel.* Hecht v. Ludwig, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (internal quotation marks omitted). To that end, this Court asked the parties to provide supplemental briefing on Plaintiff's standing to enforce the Settlement Agreement. See ECF No. 50. Having reviewed those submissions, the Court identifies a more immediate defect in its jurisdiction: Adab has jumped the gun in filing her Motion. She alleges various injuries in an effort to show standing, but none has yet occurred. The Court must consequently dismiss the suit on ripeness grounds.

### A. Finality

Before reaching ripeness, the Court pauses briefly to acknowledge the Government's variant on that theme: the NOIR does "not constitute final agency action for which Plaintiff may seek review under the Administrative Procedure Act." Opp. at 35. It is true, as USCIS notes, that courts may review only "final agency action" under the APA. See 5 U.S.C. § 704;

Franklin v. Massachusetts, 505 U.S. 788, 796 (1992). As Plaintiff correctly counters, however, her Motion "is not a challenge to agency action under the APA." Reply at 13 n.5. Rather, she is requesting that "the Court enforce the terms of a binding settlement agreement." Id. The Government's invocation of the APA, then, is misplaced.

But that is not to say that finality falls out of the picture. A plaintiff must always show her suit is ripe for review, and the Supreme Court has long treated "finality" and "ripeness" as "related doctrines." McCarthy v. Madigan, 503 U.S. 140, 144 (1992); see also Seafarers Int'l Union of N. Am., AFL-CIO v. U.S. Coast Guard, 736 F.2d 19, 26 (2d Cir. 1984) ("The law of ripeness is now very much a matter of common sense, . . . whether one speaks in the related terms of 'ripeness,' of satisfying the 'final agency action' requirement . . . , or of the exhaustion requirement."). In the ripeness context, therefore, the Court considers "whether the challenged action is 'final'" as one factor cutting against judicial review. See Marcum v. Salazar, 694 F.3d 123, 129 (D.C. Cir. 2012). No matter her cause of action, then, Adab will have an uphill battle proving any non-final agency action is ripe. The Court therefore turns to that question.

B. Ripeness

At its foundation, ripeness is about whether a federal court "can or should decide a case." Am. Petroleum Inst. v. E.P.A., 683 F.3d 382, 386 (D.C. Cir. 2012). Article III does not allow a litigant to pursue a cause of action to recover for an injury that is not "certainly impending." Wyoming Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 48 (D.C. Cir. 1999) (citing Nat'l Treasury Emps. Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur." Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotation marks omitted); see also Full Value Advisors, LLC v. S.E.C., 633 F.3d 1101, 1107 (D.C. Cir. 2011) ("A claim is

7

not ripe where the 'possibility that further consideration will actually occur before [implementation] is not theoretical, but real.'") (quoting Ohio Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 735 (1998)).

That doctrine is no mere formality. Rather, it "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . until [a] . . . decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967). It thereby "ensures that Article III courts make decisions only when they have to, and then, only once." Am. Petroleum Inst., 683 F.3d at 387 (citing Devia v. N.R.C., 492 F.3d 421, 424 (D.C. Cir. 2007)); Alcoa Power Generating Inc. v. F.E.R.C., 643 F.3d 963, 967 (D.C. Cir. 2011) ("[A] claim may be unripe where if we do not decide the claim now, we may never need to.") (internal quotation marks omitted).

In her supplemental brief, Adab crystallizes the contours of her professed injuries. She claims that USCIS "directly harmed her by preventing her from obtaining conditional residence." Put another way, she says Defendants "injured [her] by depriving her of the full and fair opportunity to use her approved I-526 petition as a basis to obtain her conditional resident status." Pl. Supp. Br. at 3. Id. Those injuries may or may not be cognizable under Article III. Compare Patel v. USCIS, 732 F.3d 633, 638 (6th Cir. 2013) (holding that an applicant "los[es] a significant opportunity to receive an immigrant visa" when USCIS denies an immigration petition, and "[t]hat lost opportunity itself is a concrete injury") (quoting Abboud v. INS, 140 F.3d 843, 847 (9th Cir. 1998)), with Von Aulock v. Smith, 720 F.2d 176, 180 (D.C. Cir. 1983) ("[T]he existence of one absolute barrier [is] sufficient injury only if its removal would mean that all other barriers to the ultimately sought relief were likely to fall."). No matter the answer,

however, there is a more basic problem.  Adab frames her alleged injuries as if USCIS had already issued a final decision revoking her I-526 petition.  But that is simply not the case — at least not yet.

At this stage, USCIS has issued only a notice of its <u>intent</u> to revoke her I-526 application.  The NOIR states that "the current evidence of record, <u>if unexplained and unrebutted</u>, would warrant a denial of the visa petition."  NOIR at 3 (emphasis added).  Per the agency's regulation, the NOIR expressly "affords Petitioner an opportunity to offer evidence" in support of her petition and "in opposition to the proposed revocation."  <u>Id.</u> at 5; <u>see also</u> 8 C.F.R. § 205.2(b).  As it stands, Adab has in fact responded to the NOIR "with evidence and argument, which USCIS is currently reviewing before issuing a decision."  Gov't Supp. Br. at 10.  In a declaration, the Government avers that it will "render a final decision" only "once review is complete."  Harrison Decl., ¶ 8.

In the context of agency adjudications, "[o]ngoing agency review renders an agency order non-final and judicial review premature."  <u>Marcum</u>, 694 F.3d at 128; <u>see also</u> <u>Int'l Telecard Ass'n v. F.C.C.</u>, 166 F.3d 387, 388 (D.C. Cir. 1999) (holding that so long as there is "[o]ngoing agency review" by agency, a petition for review "is incurably premature").  An agency's review is final only if it "imposes an obligation, denies a right, or fixes some legal relationship."  <u>Action on Smoking & Health v. Department of Labor</u>, 28 F.3d 162, 165 (D.C. Cir. 1994).  The D.C. Circuit will thus decline to exercise review so long as the ball remains in the agency's court.  <u>See, e.g.</u>, <u>Marcum</u>, 694 F.3d at 129 (dismissing suit as unripe because agency had not yet decided its administrative appeal); <u>Wade v. F.C.C.</u>, 986 F.2d 1433, 1434 (D.C. Cir. 1993) ("[D]anger of wasted judicial effort . . . attends the simultaneous exercise of judicial and agency reconsideration.").

In this case, USCIS's action is far from final.  Although it has initiated revocation proceedings, Adab might still convince the agency — as she claims to this Court — that she is eligible for an I-526 petition.  If the agency agrees, it will reaffirm her petition and kick it back to the State Department once more.  In that event, Plaintiff herself recognizes that State will normally "process the case to conclusion" — *i.e.*, grant her visa application, "except in [] rare cases."  Reply at 13-14 (quoting 9 Foreign Affairs Manual 504.2-8(C)).  Even if USCIS disagrees with her, Plaintiff can administratively appeal the decision.  See 8 C.F.R. § 205.2(d).  Although Adab challenges USCIS's decision to "institute revocation proceedings," Pl. Supp. Br. at 3, she never claims any injury that stems directly from that alleged breach; rather, all of her alleged injuries will occur only if USCIS actually revokes her petition.  Until then, the agency has issued no final action and thus done nothing to "prevent[] her from obtaining conditional residence" or to "depriv[e] her" of the opportunity to do so.  Id.  And the agency still may reverse course, such that "if [the Court does] not decide the claim now, [it] may never need to."  Alcoa Power, 643 F.3d at 967.

Finally, Adab alleges one last "additional" and "independent" injury.  The NOIR suggested that she had "committed material misrepresentations" in her initial I-526 petition, see Pl. Supp. Br. at 8, and Plaintiff challenges "the permanent bar that would result from a decision revoking Plaintiff's I-526 [petition]" on that ground.  Id. at 9 (emphasis added).  It is true that when the USCIS or State Department deems an application fraudulent, the petitioner becomes permanently ineligible for entry into the United States.  Plaintiff's alleged injury in that respect, however, suffers the same flaw as the last.  To wit, USCIS has not yet revoked Plaintiff's petition for fraud (or any other ground), and it may never do so.  Indeed, the NOIR provided two independently sufficient reasons for revocation: 1) Plaintiff was ineligible because she had not

created jobs for at least ten U.S. workers, and 2) Plaintiff was inadmissible because she had committed material misrepresentations on her application.  As explained above, Adab has an opportunity to rebut both charges, and she may well convince USCIS that any accusations of fraud are specious.  In the interim, the Court can only speculate as to whether USCIS will revoke the petition at all, and it is ill equipped to guess whether the agency will revoke on the basis of fraud.  Any injury that "would result" from such action is thus not ripe for review.

## IV. Conclusion

For the foregoing reasons, the Court will dismiss Plaintiff's Motion without prejudice.  In doing so, it expresses no opinion on whether Defendants would violate the Settlement Agreement if they do ultimately revoke Plaintiff's application.  Nor does it address any remaining jurisdictional issues that might arise at that juncture, such as whether Plaintiff would have standing to enforce the Agreement.  All the Court holds is that Adab has no basis on which to proceed today.  A contemporaneous Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 29, 2017